Charles A. HEARN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 2965, 2966.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 15, 1962.

Decided March 5, 1962.

Walter J. Bonner, Washington, D. C., with whom Michael F. X. Dolan, Washington, D. C., was on the brief, for appellant.

Ted D. Kuemmerling, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

MYERS, Associate Judge.

These are appeals from convictions of two charges of indecent exposure in violation of Code 1961 § 22–1112, which prohibits making "any obscene or indecent exposure" of the person. Appellant was also charged with committing a "lewd, obscene or indecent act" arising out of the same situation. The court acquitted him of this last charge.

As no photographs were taken by either side, the description of the location where the offenses were committed was obtained from the testimony of the witnesses given in reference to a diagram placed on a blackboard, which, unfortunately, is not too satisfactory. It appears, however, that the place and circumstances of the occurrences pertinent to the charges here are as follows:

Appellant was occupying a room on the second floor at the rear of a hotel in this city. Its one window overlooked an alley area and a roof to the first floor of the hotel, the walls of which are about ten feet high and border an alley to the rear and one on the east side. The roof covering this portion of the hotel measures about 100 x 100 feet and is located about two feet below the sill of defendant's window. The perimeter of the roof is surmounted by a ten-foot Anchor fence. Several air-conditioning ducts, about one foot wide and three feet high, traverse it about one foot above its surface. The distance from his window on the second floor down to the alley, which it faced on the east, was about 100 feet or more. About 225 feet

diagonally from his window was an alley entrance to a restaurant operated in what was once a stable. Appellant testified that, except for two small lights about 75 yards from his window, the alleys at night were unlighted.

The acts complained of were alleged to have occurred about midnight on July 5–6, 1961, and after midnight on July 6–7, 1961; and although the information charges two separate offenses on two different occasions, the conduct of appellant as described by the police officers was basically the same on both nights.

In summary, Officer Ernst testified that, while on routine patrol with his trained dog in the alley bounding the hotel on the east and to the rear, he observed a lighted window on the second floor of the hotel in which a naked white male was standing. He noted that as persons came out of the restaurant and walked in the direction of the main streets the man in the window would "bob up and down," appearing to drop to the floor of the room below the window ledge so that only his head and shoulders would remain in sight; that from time to time the man would lean out of the window with the upper part of his torso, showing his privates. There was no conversation between the officer and the man in the window, nor did the latter engage in any conversation with the passersby.

Mr. Tourat, the room clerk at the hotel, testified that when he went into the alley at the request of Officer Ernst on the first night, he saw a man looking out of a window on the second floor, identified as room 213; that this man was completely unclothed *from the waist up to the top of his head;* that he did not see his privates. His place of observation was not in the main part of the alley where one would normally walk, but in a small areaway off the alley bordering the hotel on the east where the trash cans for the hotel were kept and which was two or three steps above the alley. He saw no passersby.

The second night Detective Fochette joined Officer Ernst in the alley adjoining the hotel. He testified that, standing not in the alley but in the same little areaway off the alley used by Mr. Tourat, he observed a naked man at a second floor lighted window of the hotel. His description of the actions of the man in the window paralleled that given by Officer Ernst of his observations on the preceding night. There was no testimony that there were any signals or noises or calls from the man in the window. After a time Detective Fochette, in company with other officers, went to room 213 and, following some colloquy, entered, showed his badge, and placed appellant under arrest.

On his own behalf, appellant testified that, in connection with his work, he travels frequently and that he came to this city on July 5, 1961, to attend conferences in this area. He registered at the hotel in question and was assigned a room at the rear on the second floor. The room was small, approximately 8 or 9 feet wide by 16 feet long. The only ventilation was provided by a small window (kept closed when he was not in) through which he could see the area of the roof over the first floor of the hotel and the alleys. The weather was hot and humid. That there was a restaurant in either alley and that the alleys would be used by people going to and from the restaurant were unknown to appellant.

On the first night when he came back to the hotel, his room was stifling hot and oppressive. He raised the Venetian blind to its limit, adjusted the window to allow the maximum ventilation, and left his door open about three inches on the safety chain to create a stir of air. He removed his outer clothing and his underwear, which was soaking wet from perspiration, and began making preparation for the next day's conferences—recording notes, consulting a file folder on the dresser at the right-hand side of the window, and reading from a Washington paper which he had spread on

the floor. In the course of these activities he made a number of movements about the room across the front of the opened window. He testified he did not see anyone outside nor did he hear any noises of activities. He denied he had deliberately exposed himself or had wanted to be seen in a nude condition.

The next day he spent in conferences. Upon his return to the room in the hotel after midnight, he found it even hotter than before. He again opened his window and fixed the door on the night chain. As before, because he was hot and steamy, he removed all his clothing. Once when he went close to the window he thought he saw a man in the alley, and he immediately ducked down below the window ledge, staying out of view for several minutes as he didn't want to take the chance that someone was observing him. He looked over the ledge several times to verify whether the man had gone, and once leaned out to check to his extreme left. He saw no one, so proceeded to the other end of his room to get his pajamas and robe preparatory to going to the washroom outside his room. It was then that the officers knocked on his door, after which a colloquy followed because appellant did not know who was trying to gain admittance. The officers ultimately entered and arrested him.

Appellant conceded that when the officers entered he did perhaps say something about not meaning any harm, but he explained that the sudden appearance of the policemen at his door confused and upset him; that he had never before been arrested; that he had meant to convey that, with the shielding effect of the building, the arrangement of his room, its outlook over a dark alley, and the fact it was after midnight, he had no thought anyone would see him; and that it certainly was not his intention anyone should see him.

Although admitting he had once leaned out the window to check outside and not disputing he may well have appeared before the open window in going to his dresser located about 18 inches from the window, he denied he had done so with any lewd intention.

■ From all the testimony in this case, there seems no doubt that appellant did appear without clothes in the early hours of July 6th and 7th, 1961, at the window of his bedroom on the second floor of a hotel and that he was observed by several police officers and the room clerk. The question presented is whether the evidence would justify a finding that appellant's exposures were intentional.

■ An exposure becomes indecent when it occurs at such a time and place where a reasonable man knows or should know his act will be open to the observation of others. The required criminal intent is usually established by some action by which a defendant draws attention to his exposed condition or by a display in a place so public that it must be presumed it was intended to be seen by others.[1] However, the defendant must be aware of all those facts which make his conduct criminal.[2] Nudity is not *per se* "obscene."[3] It is not illegal for a man to be completely unclothed in his room. It becomes so only if he intentionally exposes himself to other persons.

1. Peyton v. District of Columbia, D.C. Mun.App., 100 A.2d 36, 37. (Cited by the trial judge in finding defendant "guilty of the two charges of indecent exposure" based "on the rule of law set forth * * in that case.")

2. United States v. Crimmins, 2 Cir., 123 F.2d 271, 272; Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047.

3. See: Sunshine Book Co. v. Summerfield, D.C., 128 F.Supp. 564, 567, aff'd, 101 U.S.App.D.C. 358, 249 F.2d 114, rev'd, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed. 2d 352.

A fair factual comparison of the many recorded cases [4] involving convictions for similar offenses in this and other jurisdictions reveals that although each involved an actual exposure, there was also shown a deliberate intention by each defendant to attract outside attention to his nudity. In each instance the defendant did something to call attention to his nakedness. Such conduct was not observed in the present case where there was no design or action by defendant to attract attention to his undressed condition in his own room in the hotel. In the cited cases it was the public that was annoyed or embarrassed by the exhibition of nudeness purposely brought to their attention, while here it is rather significant that the only persons who saw appellant at the window of his room (other than the room clerk who was specially called out to observe) were the police officers who were trying to see him. Although the two officers testified that a number of persons were traversing the alley on the nights in question, there was no testimony that any of these persons paused to observe the figure in room 213.

Intent to commit an act similar to that with which appellant is here charged can be shown by some action by which attention is drawn to the exposed condition or by a display in a place so public that it must be presumed that it was intended to be seen by others.[5] In the present case, appellant made no noises, no sounds, no gestures, no signals in any way for the purpose of attracting attention to his nudity. That he "bobbed up and down" is consistent with his statement concerning movements in the narrow hotel bedroom to the dresser to make notes and in bending to read the newspaper on the floor. There was no testimony by any witness denying that there was a notebook on the dresser or a newspaper spread upon the floor. Neither is there any evidence that appellant made any effort to attract attention to himself. Certainly the exposures described by the police officers do not equate with the conduct in those cases in which the defendants were found guilty. Their exposures were palpably "intentional" while appellant's were "accidental."

Appellant was acquitted of a charge of committing an indecent act on July 7th, and the Government is thereby precluded, as a matter of law, from relying upon the evidence relating to this alleged indecent act to support its charge of an alleged indecent exposure on the same night. By acquittal of the former charge, the issue of "an indecent act" is *res judicata* and cannot be considered as evidence to support the second charge of indecent exposure.[6]

Considering all the evidence in this case, coupled with the unimpeachable character evidence,[7] we find it short of the required proof required for conviction. Absent any showing of signals, calls, or other efforts by appellant to attract the attention of passers-by in the alley—and bearing in mind his reasonable explanation for his nudity on both occasions, the fact that the only acts shown were his normal movements in his room, and that his second floor window at the rear of the hotel overlooked a seemingly uninhabited alley area, the Court reaches the inescapable conclusion that the

4. Peyton v. District of Columbia, supra; Davenport v. United States, D.C.Mun. App., 56 A.2d 851; Truet v. State, 3 Ala. App. 114, 57 So. 512; Davison v. State, Okl.Cr., 281 P.2d 196; Messina v. State, 212 Md. 602, 130 A.2d 578; Com. v. Bishop, 296 Mass. 459, 6 N.E.2d 369; Strong v. State, 63 Ga.App. 413, 11 S.E. 2d 238; State v. Martin, 125 Iowa 715, 101 N.W. 637; People v. Devine, 271 Mich. 635, 261 N.W. 101; Case v. Com., 313 Ky. 374, 231 S.W.2d 86; and Mc-

Kinley v. State, 33 Okl.Cr. 434, 244 P. 208.

5. State v. Peery, 224 Minn. 356, 28 N.W. 2d 851.

6. United States v. Kramer, 2 Cir., 289 F. 2d 909.

7. Transcript, p. 136. "The government is prepared to stipulate that the defendant's character and reputation are of the highest order, and the best testimony of that is his top security clearance."

appellant did not deliberately and intentionally expose himself so that his conduct was within the purport of the statute.

The evidence by the police officers who were deliberately looking for appellant, who stationed themselves in an elevated area just off the alley proper to get the best possible view of him, and who were the only persons who actually testified to seeing his complete naked condition in his room, coupled with the absence of testimony by any other person using the alley on either night and of any showing that appellant had made any effort to attract attention to himself, balanced against the testimony and evidence of appellant that he had no intention to wilfully expose himself to persons in the alley and buttressed by his conceded excellent character and reputation, falls short of establishing beyond a reasonable doubt that appellant was guilty of the acts charged in the information.

We are of the clear opinion that the convictions of appellant of the two offenses charged must be set aside for lack of the requisite proof. It is therefore necessary that the two convictions be reversed and the Court directed to enter judgments of acquittal.

Reversed.