**Duane R. MILLER,
Petitioner–Appellant,**

v.

**BARBERTON MUNICIPAL COURT,
Respondent–Appellee.**

**No. 90–3627.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 11, 1991.

Decided June 7, 1991.

Rehearing and Rehearing En Banc
Denied Aug. 23, 1991.

**776**

Nancy Grim (argued), Akron, Ohio, Thelma Furry, Monroe Falls, Ohio, for petitioner-appellant.

Michael J. Angelo, Cleveland, Ohio, for respondent-appellee.

Before KENNEDY and JONES, Circuit Judges, and CHURCHILL, Senior District Judge.[*]

PER CURIAM.

In this appeal, we consider whether appellant was denied his constitutional rights to due process or privacy when an Ohio court convicted him of public indecency.

---

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

## I

At approximately 11:30 p.m. on August 6, 1988, appellant Duane Miller ("Miller") and two friends arrived at the Loyal Oak Swim Club in Norton, Ohio. Miller had been to the pool at least twice before. He and his friends were "private club" members. This meant that they could enter the facility only after 11:00 p.m., when the regular or family members were required to leave. The owner of the facility allowed the private club members to swim in the nude.

The swimming pool was outside. It was surrounded by a chain-link fence which was partially covered with plastic. Neighbors could see into the pool area. Maxine Clapper testified that she lived about one-hundred feet from the pool and could see "right straight into the pool" from her kitchen window because her house sits higher than the fence. Transcript of Trial Proceedings at 7–9. Clapper also testified that on the night in question, the pool was lit up "like a football field." *Id.* at 8. Elizabeth Rhodes testified that she could see directly into the pool area from her back yard because there was no plastic covering on the side of the pool facing her house. *Id.* at 33.

When he arrived at the swim club, Miller was wearing swim trunks underneath his street clothes. At his friends' urging, however, Miller left his street clothes and other belongings on a table, walked to the pool with a towel around his waist and then removed his trunks at the edge of the pool before entering.

After swimming in the pool for awhile, Miller and his friends decided to go to the hot tub. Miller covered himself with a towel during his trip from the pool to the hot tub.

The next time Miller rose out of the hot tub, however, he did not cover himself with a towel. He walked five or ten feet in the nude and grabbed a towel which he then put around his waist. After drying himself off, Miller sat down to smoke a cigarette.

At this point two policemen, who had been watching the activity in the pool area because of the neighbors' complaints, arrested Miller and the other men who had been in the hot tub and charged them with public indecency.

The case came on for a non-jury trial in the Barberton Municipal Court. The Court found all defendants guilty and sentenced them each to thirty days in jail and imposed fines of $250.00. The Court suspended the jail time and $200.00 of the fines, however, on the condition that the defendants not swim nude at the Loyal Oak Swim Club for two years.

Miller appealed to the Ohio Court of Appeals, which affirmed his conviction. The Ohio Supreme Court denied leave to appeal.

Miller then filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio on November 16, 1989. On June 11, 1990, the district court dismissed the petition.

Miller now appeals from the district court's order denying his petition for a writ of habeas corpus. We have jurisdiction and for the reasons stated below, we affirm.

## II

### A

Miller initially argues that his conviction for public indecency violated his right to due process.

■ A conviction does not violate due process unless, after viewing the evidence in the light most favorable to the prosecution, the Court determines that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 2785–86, 61 L.Ed.2d 560 (1979).

■ Miller argues that no rational trier of fact could have concluded that he was reckless with respect to whether he would be viewed by and affront others, as required by the public indecency ordinance.[1] He contends that he took reasonable precautions against being viewed by others. He went to a private club. The pool was not in what we typically think of as a residential area and it was surrounded by a fence that had a partial plastic covering. He covered himself with a towel at most times when he was outside of the water and he had only been to the pool two times before and had never heard of any neighbors taking offense to the nude swimming.

By looking (as we must) at the evidence in the light most favorable to the prosecution, however, we conclude that a rational trier of fact could have concluded that Miller was reckless. Under Ohio law, "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." Ohio Rev.Code Ann. § 2901.22(C). Miller admits that he was nude in the pool area. He was a member of the club and had been there twice before. The testimony indicated that there were two homes within *one-hundred feet* of the pool. The pool was lit up like a "football field" on the night in question. The fence was only partially covered with plastic and was, therefore, ineffective as a means of preventing neighbors and others from viewing the pool area. A rational trier of fact could have concluded from these facts that Miller was reckless with regard to the risks of his conduct.

Three cases cited by Miller are inapposite. *Hearn v. District of Columbia*, 178 A.2d 434 (D.C.1962) involved a defendant who was nude in a hotel room as opposed to an outdoor pool area next to homes. *Duvallon v. State*, 404 So.2d 196 (Fla.Dist. Ct.App.1981) is also inapposite because in

---

1. The municipal ordinance is identical to the Ohio public indecency statute, which reads as follows:

    (A) No person shall *recklessly* do any of the following, under circumstances in which his or her conduct is likely to be viewed and affront others, not members of his or her household:

    (1) Expose his or her private parts, or engage in masturbation.

    Ohio Rev.Code Ann. § 2907.09 (emphasis added).

that case the Florida statute provided, unlike the Ohio statute, that public nudity could only be prosecuted if the act was lewd or lascivious. Finally, *State v. Goldsmith*, No. 83–01–002 (Ohio Ct.App. June 30, 1983) (unreported), 1983 WL 4422, is likewise inapposite because the defendant in that case was 250 yards from a rest area parking lot and surrounded by bushes.

### B

■ Miller next argues that his conviction for public indecency violated his right to privacy.

The Constitution "embodies a promise that a certain sphere of individual liberty will be kept largely beyond the reach of government." *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747, 772, 106 S.Ct. 2169, 2184–85, 90 L.Ed.2d 779 (1986). The outlines of this sphere are fairly clear, at least as they relate to this case. "A person has a constitutional right to be naked in a private place." *Richards v. Thurston*, 424 F.2d 1281, 1285 (1st Cir.1970). Public nudity, however, can be banned. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 211 n. 7, 95 S.Ct. 2268, 2273–74 n. 7, 45 L.Ed.2d 125 (1975).

Miller was not in a private place. He was in an open, outdoor swimming area that was well lit and only partially enclosed with a plastic-covered fence. At least two homes stood within one-hundred feet of the pool area.

Accordingly, Miller's conviction for public indecency did not violate his right to privacy.

AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

This case has troubled me from the start. As I reviewed the briefs and the arguments surrounding the criminal conviction of appellant Miller and his three companions, I was astonished that in these days of crowded court dockets and overtaxed law enforcement resources, such a prosecution would ever occur in the first place, much less be brought before this court on its fourth round of appellate review. It seems clear to me that there is more to this case than an avid desire to suppress nude swimming at a private pool. However, my speculations about the less than admirable motivation behind the arrest and conviction of Duane Miller and his friends cannot change the fact that the majority finds that Miller's conviction should be affirmed. As I believe there is simply no evidence which could support a rational trier of fact in the conclusion that Miller acted with the requisite reckless disregard of a known risk that he would be seen and would affront others, I dissent.

As the majority correctly points out, we must reverse a conviction as violative of due process if, after viewing the evidence in the light most favorable to the prosecution, we determine that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 2785–86, 61 L.Ed.2d 560 (1979). It is my view that applying this standard to the facts presented at trial, Miller's conviction cannot stand. The Norton, Ohio Public Decency statute (which is identical to Ohio Rev.Code § 2907.09) states:

(A) No person shall *recklessly* do any of the following, under circumstances in which his or her conduct *is likely to be viewed by and affront others*, not members of his or her household:

(1) Expose his or her private parts, or engage in masturbation.

(Emphasis added.) The ordinance clearly requires not only that a defendant act recklessly, but the defendant must do so in circumstances where he is likely to be seen and to offend others.

Every first-year law student knows that "recklessness" is not simply an adjective. Rather, it is a legal term of art with specific meaning and requirements. The Ohio Rev.Code § 2901.22(C) defines "recklessness" as follows:

A person acts recklessly when, *with heedless indifference to the consequences*, he *perversely disregards a*

*known risk* that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect *to circumstances* when, with *heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.*

(Emphasis added.) Under Ohio law, Miller could only be guilty of indecency if he "recklessly" flaunted his nudity with "heedless indifference to the consequences" and with "perverse disregard" of a "known risk" that he would likely be seen and offend others. The uncontested evidence before the court simply does not support such a finding.

The testimony demonstrates that Miller acted with the utmost discretion during his entire time at the pool. When he first removed his bathing suit, he did so beside the pool and kept his clothes and towel by the water's edge. J.App. at 75. When he exited the pool to move to the hot tub, he immediately wrapped himself in his towel and moved his clothes to a table "five or ten feet away" from the jacuzzi. *Id.* at 76, 78. His private parts were exposed only during the short distance between the jacuzzi and his towel which was sitting on a nearby chair. Miller was not naked on the diving board, he did not use the slide, he was not jumping in and out of the pool. *Id.* at 75–76. In short Miller was discrete even with respect to being observed by the other swimmers at the pool. It is hard to imagine how such discretion could be turned into "heedless indifference" and "perverse disregard" for the known possibility that he would be seen by others.

However, even conceding that Miller's nudity in itself could constitute recklessness in certain circumstances, those circumstances were not present in this case. For example, there was no evidence that Miller acted recklessly with regard to a "known risk" that he might be seen. He testified that he had only been to the pool once or twice before and only at night. *Id.* at 83. All the parties acknowledged that this area was not primarily a residential area. In fact, one of Miller's co-defendants, Robert Rhodes, who was familiar with the sur-

rounding area both in the daylight and at night, and had been to the pool some twenty times, testified with respect to the two houses near the pool:

> To be honest, I did not even know there were houses around there. Every time I had gone by I only have noticed three landmarks, the swimming pool, the Loyal Oak Golf Club and what was at one time the Brown Derby Restaurant, which was changed hands to another name [sic], and then it's burnt down since.

*Id.* at 71. There was also testimony indicating that a number of trees and a considerable stretch of yard blocked the view from the pool to the Rhodes house. *Id.* at 73. Further, Jack Leatherman, another co-defendant testified that the owner of the pool had assured patrons that his privacy fence had been approved by the city and that nude swimming was okay. *Id.* at 68–9. Finally, there was testimony to indicate that the bright lights at the pool made it difficult to see beyond the pool area. *Id.* at 69. Under these circumstances, it requires a real stretch to impute to Miller, who was unfamiliar with the area and only had visited the pool at night, the requisite knowledge of the risk that he might be seen.

Perhaps the most telling fact with respect to Miller's supposed "perverse disregard" of a "known risk" that he might be seen is the surprise and outrage of Miller and the other defendants when police told them they had been watched with binoculars by police and neighbors from Maxine Clapper's breakfast nook. Officer Tomblin, describing the spontaneous responses of the defendants at the time of arrest said:

> A. They wasn't aware that they were being watched. They seemed upset that this had happened.
>
> Q. They were upset with whom?
>
> A. The owner, in other words, they came there with the intention it was private and that seemed to be the main conversation.

*Id.* at 61. All of the defendants and even the arresting officer acknowledged that the defendants were unaware they could be seen or even of the possibility that they

could be seen from the surrounding area. While recklessness certainly does require less than subjective intent, it requires more than mere negligence to the possibility that an event might occur. *See State v. Klein*, 51 Ohio App.2d 1, 364 N.E.2d 1169 (1977) (negligence is insufficient to convict when recklessness is required).

The Majority focuses on three facts—the proximity of the Clapper house to the pool, the bright pool lights and the fact that the plastic covering on the fence was incomplete—to determine that the evidence was sufficient to convict Miller of recklessness. However, when one considers the remaining facts in the record, including Miller's discretion at the pool, his lack of knowledge of the surrounding area, his belief that the pool was private, the assurance that the privacy fence had been approved by the city, his shock at the fact that he could actually be seen by neighbors, and perhaps most significantly, that these events took place at a late-night private swimming club which professed to allow nude swimming, a rational trier of fact could conclude, at most, that Miller was negligent in walking nude from the jacuzzi to his towel. As discussed above, negligence is simply insufficient to convict Miller for a crime which requires, as one of its essential elements, criminal recklessness. The prosecution was required to demonstrate criminal recklessness as it is defined by Ohio law to convict Miller for criminal behavior. Miller's original conviction in this case was unjust because the evidence is simply insufficient to demonstrate the requisite recklessness. Unfortunately, the majority compounds the original injustice to Miller by once again allowing evidence of Miller's arguable negligence to stand in for criminal recklessness and denying him deserved habeas relief.

As I believe that the evidence in this case was constitutionally insufficient under the standard articulated in *Jackson v. Virginia*, I would reverse the decision of the district court and grant Miller's petition.