# United States Court of Appeals for the Federal Circuit

2007-1430

AGFA CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Kenneth G. Weigel, Alston & Bird LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Paul F. Brinkman and Jeffrey M. Schwartz.

Mikki Graves Walser, Senior Trial Counsel, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Jeanne E. Davidson, Director, of Washington, DC, and Barbara S. Williams, Attorney-in-Charge, of New York, New York. Of counsel on the brief was Michael W. Heydrich, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

2007-1430

AGFA CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in Case No. 05-00352, Chief Judge Jane A. Restani.

———————————————

DECIDED: March 24, 2008

———————————————

Before LOURIE, Circuit Judge, CLEVENGER, Senior Circuit Judge, and PROST, Circuit Judge.

LOURIE, Circuit Judge.

Agfa Corporation ("Agfa") appeals from the decision of the United States Court of International Trade granting final judgment in favor of the United States and holding that United States Customs and Border Patrol ("Customs") properly classified imported metal plates coated with a photosensitive emulsion under subheading 3701.30.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Because the Court of International Trade correctly classified the merchandise, we affirm.

BACKGROUND

The subject merchandise consists of thin planed and grained aluminum sheets coated on one side with a photosensitive polymer layer and used for offset lithographic printing. All of the subject sheets have at least two sides measuring greater than 255 mm. In order to prepare the sheets for printing, a machine uses light, typically in the form of a laser, to either harden the areas of the polymer layer corresponding to the printed image or soften the areas of the polymer layer not corresponding to the image, depending on the specific polymer in use. The sheet is then washed to remove the softer, non-image areas. The prepared sheet is then wrapped around a cylinder within the printing press. During operation of the printing press, the sheet is first coated by a fine film of a water-based solution that adheres to the exposed aluminum and then by ink that adheres only to the remaining polymer. The oil-based ink and water solution do not mix. The ink transfers from the sheet to a blanket cylinder and then from the blanket cylinder to the paper.

At issue are twenty-six importations, consisting of five specific models, of the subject merchandise entered into the United States by Agfa between September 29, 2003, and November 2, 2003. Customs classified the merchandise under subheading 3701.30.00, covering "Photographic plates and film in the flat, sensitized, unexposed, of any material other than paper, paperboard or textiles . . . : Other plates and film, with any side exceeding 255 mm" with a 3.7% ad valorem duty. Agfa filed a protest of Customs' decision that Customs subsequently denied.

On June 8, 2005, Agfa filed an action in the Court of International Trade protesting the final decision of Customs and asserting that the subject merchandise

was properly classifiable under subheading 8442.50.10, covering "printing . . . plates . . . : Printing . . . plates . . . : Plates," and was thus duty free.

The Court of International Trade held that the plates were prima facie classifiable under heading 3701, but not under heading 8442, and that Customs therefore properly classified the merchandise under subheading 3701.30.00. The court stated that there was no dispute between the parties that the plates, as imported, were flat, sensitized, and unexposed and had at least two sides measuring greater than 255 mm. The court determined that the specific definition of "photographic" in Note 2 to Chapter 37 counseled against finding "photographic plate" to be a term of art. The court also determined that Agfa's proposed definition of "photographic plate," requiring a glass substrate and allegedly based on commercial understanding of the term, was contrary to the plain language of heading 3701 stating that "photographic plates" may be "of any material other than paper, paperboard or textiles." The court then held that the imported plates met the Note 2 definition of "photographic" because the use of a laser to create the desired image in the polymer layer meant that light was used to indirectly create the printed image. The court also observed that the Explanatory Notes for heading 3701 indicate that "photographic plates" may be made from a variety of materials and used in photomechanical processes. The court determined that heading 8442, in contrast, includes no reference to photosensitive materials, and the Explanatory Notes for heading 8442 specifically exclude plates coated with a photographic emulsion.

Agfa timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

"The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question of law which we review de novo." Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (Fed. Cir. 1994). A classification decision involves two underlying steps: (1) determining the proper meaning of the tariff provisions, which is a question of law; and (2) determining which heading the particular merchandise falls within, which is a question of fact. Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006)

Agfa argues that the Court of International Trade erred and that the imported plates should be classified under subheading 8442.50.10. Agfa states that because the merchandise is used for printing, and sold and referred to in the trade as printing plates, it falls under the plain language of heading 8442 for "printing . . . plates." Agfa also argues that the court erred in giving undue weight to the Explanatory Notes for heading 8442 because the Notes are not binding and the specific Note at issue is inconsistent with the plain language of heading 8442. Agfa adds that, unlike "photographic," the term "photographic plate" is not defined in the notes to Chapter 37, and the term cannot be broadened to capture merchandise clearly recited in another heading. Agfa argues that the court should therefore have relied on the commercial understanding of the term "photographic plates." Finally, Agfa argues that even if the merchandise is prima facie classifiable under both heading 3701 and 8442, heading 8442 prevails under General Rule of Interpretation 3 as the more specific provision.

The government responds that Customs and the Court of International Trade correctly classified the merchandise under subheading 3701.30.00. The government

argues that heading 8442 does not describe or make provision for unexposed plates with a photosensitive surface. The government adds that, while not binding, the Explanatory Notes are persuasive authority, and they specifically exclude plates with photosensitive coatings from heading 8442, indicating that heading 3701 is the appropriate heading for such merchandise. Also, because the plates have a photosensitive surface that allows visible images to be formed indirectly by the action of light, they satisfy the definition of "photographic" set forth in Note 2 to Chapter 37.

We agree with the government that the Court of International Trade correctly granted judgment affirming Customs' classification of the merchandise. We first set out the relevant portions of the HTSUS, as follows:

| | |
|---|---|
| 3701 | Photographic plates and film in the flat, sensitized, unexposed, of any material other than paper, paperboard or textiles; instant print film in the flat, sensitized, unexposed, whether or not in packs: |
| 3701.10.00 | For X-ray |
| | *   *   * |
| 3701.20.00 | Instant print film |
| | *   *   * |
| 3701.30.00 | Other plates and film, with any side exceeding 255 mm |

*   *   *   *   *   *   *   *   *   *   *

| | |
|---|---|
| 8442 | Machinery, apparatus and equipment . . . for type-founding or typesetting, for preparing or making printing blocks, plates, cylinders or other printing components; printing type, blocks, plates, cylinders and other printing components; blocks, plates, cylinders and lithographic stones, prepared for printing purposes (for example, planed, grained or polished); parts thereof |
| | *   *   * |
| 8452.50 | Printing type, blocks, plates, cylinders and other printing components; blocks, plates, cylinders and lithographic stones, prepared for printing purposes (for example, planed, grained or polished): |
| 8452.50.10 | Plates |

Examination of its heading shows that the imported plates are prima facie classifiable under heading 3701. The language of heading 3701 is broad, covering "[p]hotographic plates . . . of <u>any</u> material other than paper, paperboard or textiles." (Emphasis added.) Agfa's argument that according to commercial use a photographic plate must be rigid and transparent would render heading 3701's qualification excluding paper, paperboard, and textiles unnecessary. Further, the fact that the heading specifically excludes certain materials but does not recite a transparency requirement belies Agfa's position.

The imported goods also meet the definition of "photographic" in Note 2 to Chapter 37. Note 2 provides that the word "'photographic' relates to the process by which visible images are formed, directly or indirectly, by the action of light or other forms of radiation on photosensitive surfaces." After washing, the action of the laser results in the creation of the visible image on the aluminum plate that will be used to transfer the ink that will create copies of that image on paper. Thus, a visible image is formed directly on the photosensitive surface by the action of light on that surface, and visible images are formed indirectly on paper by the action of light on that surface. The merchandise is thus photographic.

The Explanatory Notes to heading 3701 also support the conclusion that the merchandise is prima facie classifiable under that heading. "Explanatory notes are not legally binding but may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision." <u>Degussa Corp. v. United States</u>, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (<u>citing</u> <u>Motorola, Inc. v. United States</u>, 436 F.3d 1357, 1361

(Fed. Cir. 2006)). Contrary to Agfa's argument requiring transparency, the Explanatory Notes for heading 3701 describe "metal or stone (for photomechanical processes)" as "materials commonly used" for goods under that heading. Again, contrary to Agfa's statement that the definition of photographic requires that the light directly cause a chemical reaction that forms the visible image (e.g., light acting through a negative on photographic paper), the Notes state that the included "goods are put to many uses such as . . . [p]hotomechanical process plates of the type used for photoengraving, photolithography, etc." Thus, plates for processes including a mechanical step, such as transfer of ink or engraving, after the action of light on the photosensitive medium are clearly included within heading 3701.

We also agree with the government and the Court of International Trade that the imported plates are not prima facie classifiable under heading 8442. The mere fact that the subject merchandise is referred to in the marketplace as "printing plates," a term included in heading 8442, is by itself insufficient to establish that the imported goods should be classified under that heading. The wording of heading 8442 is strongly indicative of purely mechanical printing processes. Further, while heading 8442 itself does not foreclose photomechanical printing plates, neither does it specifically identify plates for photomechanical printing. While the language of heading 8442 might allow for some ambiguity, the Explanatory Notes to heading 8442 do not. They directly address the issue under consideration here. The Notes provide that "[s]ensitized plates (e.g., consisting of metal or plastics, coated with a sensitized photographic emulsion, or of a sheet of photosensitive plastics, whether or not affixed to a support or metal or other material) are excluded (heading 37.01)." It is hard to imagine a more definitive

statement on the matter before us. The exact goods at issue are specifically described and excluded from heading 8442, and the reader is specifically directed to heading 3701, the heading under which Customs has classified the subject merchandise. As stated above, while the Explanatory Notes are not binding, they are persuasive authority, and Agfa provides no convincing reason to disregard such clearly relevant guidance.

Agfa does not dispute the classification of the imported goods under subheading 3701.30.00, once it is established that they are classifiable under heading 3701.

## CONCLUSION

We affirm the Court of International Trade's decision granting judgment in favor of the government and confirming Custom's classification of the imported goods under heading 3701.30.00 of the HTSUS.

## AFFIRMED