
**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. NC-14-1190-PaJuTa |
| | ) |
| MC2 CAPITAL PARTNERS, LLC, | ) Bankr. No. 11-14366 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| MONAHAN-PACIFIC CONSTRUCTION | ) |
| CORPORATION, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| | ) |
| COMMITTEE OF UNSECURED CREDITORS, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on February 19, 2015
at San Francisco

Filed - February 25, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaraslovsky, Bankruptcy Judge, Presiding

Appearances:    Wendy McGuire Coats of McGuire Coats LLP argued for
appellant Monahan-Pacific Construction Corp; Peter
Wakaye Ito of Polsinelli Shughart P.C. argued for
appellee Committee of Unsecured Creditors.

Before: PAPPAS, JURY, and TAYLOR, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8024-1.

-1-

In this appeal, creditor Monahan-Pacific Construction Corporation ("MPCC") challenges certain findings made by the bankruptcy court in an order sustaining the objection of the Official Committee of Unsecured Creditors (the "Committee") to MPCC's claim and the court's order denying MPCC's motion to amend those findings. We AFFIRM the bankruptcy court's findings and orders.

## I.  FACTS

Chapter 11[2] debtor MC2 Capital Partners, LLC ("MC2") is a California limited liability company formed to develop an eighty-two-unit apartment complex in San Rafael, California (the "Property"). MPCC is the general contractor engaged by MC2 to construct the improvements on the Property. Thomas M. Monahan ("Monahan") controls both MC2 and MPCC, and he controls the accounting for both companies.

On July 18, 2008, Pacific National Bank (together with its successor in interest U.S. Bank, the "Bank") loaned MC2 $35 million on a recourse basis, secured by the Property. The purpose of the loan was to fund construction on the Property. The loan was memorialized in a Promissory Note, a Construction Loan Agreement, and a Construction Deed of Trust. Monahan guaranteed the payment obligations under the Note and performance under the Construction Loan Agreement.

Under the Construction Loan Agreement, MPCC as general contractor would submit a monthly invoice called an "Application

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. We refer to the Federal Rules of Civil Procedure as "Civil Rules."

for Payment" ("Application") to MC2 and, in turn, MC2 would submit the Application to the Bank as part of a loan draw request. Each Application included an itemization of the costs that MPCC had incurred to date, the amount held back until completion of the project, the amount billed by MPCC from the previous Application, the current payment due MPCC, and the balance to finish the contract. The Bank was to be informed of any credits for construction costs issued by MPCC in favor of MC2.

In late 2010, MPCC lost a lawsuit and a money judgment was entered against it. Subsequently, MCC's contractor's license was terminated by the State of California.

Then, on December 3, 2010, Monahan terminated the construction contract between MC2 and MPCC.

On April 6, 2011, U.S. Bank notified MC2 that it was in default under the loan. U.S. Bank formally declared a default and accelerated the Note in a letter to MC2 dated June 14, 2011.

Next, on December 1, 2011, MC2 filed a chapter 11 petition. Monahan was designated as the responsible person for the corporate debtor-in-possession MC2, and the U.S. Trustee appointed the Committee on January 4, 2012.

MC2's proposed plan of reorganization was confirmed by the bankruptcy court on May 11, 2012. The plan provided for liquidation of the assets of MPCC and for pro rata distribution of the proceeds to unsecured creditors, after payment in full of all secured and priority claimants.

On April 5, 2012, MPCC filed an unsecured proof of claim for $1,614,713.51. This amount represented the total due from MC2 to MPCC for construction costs for the Property, and was comprised of

-3-

$759,410.22, claimed due for services before the contract was terminated, and $855,303.69 for "post termination transition services."

The Committee objected to MPCC's proof of claim on August 23, 2012; it amended that objection on December 10, 2012. The Committee argued, among other things, that MPCC had lost its contractor's license during the term of the contract, and that under Cal. Bus. & Prof. Code § 7031(b), MPCC was therefore liable to MC2 for all amounts paid to MPCC while it was an unlicensed contractor. The Committee also noted that MPCC had not submitted or attached to its proof of claim any documents to support its claim and that the Committee had not completed discovery.

MPCC responded to the Committee's objection on September 13, 2012, arguing that it was entitled to be paid for its services, and that it was not required to file supporting documents.

On December 5, 2013, the bankruptcy court conducted an evidentiary hearing regarding the Committee's objection to MPCC's claim. At the beginning, the parties agreed that there were two critical issues for consideration by the bankruptcy court: (1) the status of five invoices/Applications that MPCC contends were not paid or only partially paid; and (2) the impact of a credit memo that may have been created by MPCC "after the fact" to create a claim.

The bankruptcy court heard testimony from Jeff Koehler, a vice president of U.S. Bank and custodian of the documents regarding the loan, and Jeanne Zamanillo, controller of MPCC. While the bankruptcy court took the issues under advisement at the conclusion of the hearing, it offered its opinion before

-4-

adjourning that Monahan had engaged in "machinations" regarding some of the relevant transactions. Hr'g Tr. 82:2-10, December 5, 2013.

The bankruptcy court entered a "Memorandum on Objection to Claim 35" on December 16, 2013. In it, the court found that:

> Monahan feared that the judgment creditor would seize any progress payments made by MC2 so he terminated the construction contract between MC2 and MPCC, ostensibly (i.e., for the purposes of the judgment creditor) due to poor performance by MPCC. The date of the cancellation was December 3, 2010. Thereafter, MC2 was to pay the subcontractors directly. Monahan had his accountants mark all but one outstanding invoice from MPCC as "PAID" and issued a credit to MC2 for $2,118,586.46. Of course, Monahan saw no need to inform the construction lender, U.S. Bank, about any of his machinations. He continued to present the bank with requests for progress payments in the name of MC2, showing that payments were current.

Memorandum at 1.

Based on the evidence and its findings, the bankruptcy court concluded:

> A proof of claim is prima facie evidence of its validity until an objector produces evidence to rebut the presumption of validity. The burden then shifts to the claimant to prove its claim. In re Garvida, 347 B.R. 697, 7078 (9th Cir. BAP 2006). In this case, the Creditors Committee has rebutted the presumption of validity by demonstrating that most of the invoices supporting the [proof of] claim were marked "PAID" and that Monahan, on behalf of both MC2 and MPCC, represented to U.S. Bank that the invoices supporting the claim were paid. MPCC is unable to prove its claim. **Monahan was manipulating the books and records of both MC2 and MPCC in order to avoid enforcement efforts of a judgment creditor.** He controlled both entities, and his accountants kept the books of both. No independent audit was produced. Due to these facts, the evidence produced to substantiate the claim lacks all credibility. The court cannot find by a preponderance of the evidence that the claim has any validity at all.

Memorandum at 2 (emphasis added). The bankruptcy court entered an order sustaining the Committee's objection and disallowing MPCC's

claim on December 17, 2013.

On December 30, 2013, MPCC filed a motion to amend the order relying on Rule 9023, which incorporates Civil Rule 59(e). The motion did not ask the bankruptcy court to modify or change the order disallowing the claim in any manner. Instead, the motion sought only that the bankruptcy court amend its Memorandum to remove the finding that "Monahan was manipulating the books and records of both MPCC and MC2 . . . as such language could be improperly used in state and/or adversary proceedings to argue this Court had reviewed the books and records of MPCC and MC2, when in fact such a review has not occurred." MPCC sought this relief because it was concerned about the potential preclusive effect of the subject finding.

The bankruptcy court heard the motion to amend on April 11, 2014. During the hearing, the court repeatedly reminded counsel for MPCC that it was not its responsibility to anticipate the preclusive effects of its orders in future proceedings:

> I've rendered my decision. I gave my reasons. And if another court decides that they want to give preclusive effect, that's for another court to decide.

Hr'g Tr. 5:6-8, April 11, 2014. However, MPCC's counsel insisted that the alleged offensive finding should be removed from the Memorandum.

The bankruptcy court entered a minute order on April 11, 2014, memorializing its decision to deny the motion to amend and then entered an order denying the motion on June 2, 2014. MPCC filed a timely notice of appeal regarding both the order sustaining the objection to claim, and the minute order denying the motion to amend, on April 14, 2014.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). However, we have concerns about MPCC's standing and, thus, our jurisdiction over this appeal, under 28 U.S.C. § 158.

The constitutional requirements for standing under Article III are jurisdictional, cannot be waived by any party, and may be considered by the court sua sponte. City of L.A. v. Cnty. of Kern, 581 F.3d 841, 845 (9th Cir. 2009). In its most recent discussion of constitutional standing, the Ninth Circuit observed.

> The oft-repeated "irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). "First, the plaintiff must have suffered an 'injury in fact,'" which is both concrete and particularized, as well as actual or imminent. Id. "Second, there must be a causal connection between the injury and the conduct complained of," meaning that the injury must be "fairly traceable to the challenged action of the defendant." Id. (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976) (quotation mark and alterations omitted)). Third, it must be likely that a favorable decision would redress the injury identified. Id. at 561.

Sturgeon v. Masica, 768 F.3d 1066, 1071 (9th Cir. 2014). These three elements also apply to standing to appeal. Wolford v. Gaekle (In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.), 33 F.3d 29, 30 (9th Cir. 1994). Commenting further on the first element, injury in fact, the Supreme Court has noted that the injury cannot be "conjectural or hypothetical." Knisley v. Network Assocs., Inc., 312 F.3d 1123, 1126 (9th Cir. 2002).

The sole request by MPCC for relief in this appeal is that the Panel strike the phrase "manipulate the books and records" from the bankruptcy court's findings in its Memorandum sustaining

-7-

the Committee's objection to MPCC's claim. In the bankruptcy court, MPCC claimed it was harmed by this finding because it implied that it had engaged in fraud.

> [MPCC Counsel]: Manipulation of books and records is essentially committing an act of fraud. . . . My client then bears the burden of disproving that fraud occurred[.]

However, the bankruptcy court immediately corrected counsel:

THE COURT: I didn't make a finding of fraud.

Hr'g Tr. 5:9-14.

It is important to note that the word "fraud" does not appear in either of MPCC's briefs on appeal. MPCC's suggestion that the bankruptcy court's finding that Monahan was "manipulating the books and records" constitutes a finding of fraud that could potentially be afforded preclusive effect in other proceedings is not compelling under these facts. As a result, it can be argued that MPCC has not established that it has suffered any cognizable injury in fact that is concrete and particularized, actual or imminent, and not hypothetical or conjectural. In response, MPCC argues that the bankruptcy court's allegedly erroneous finding may subject it to some amorphous adverse exposure in subsequent litigation. The premise for this contention is completely speculative.[3]

---

[3] We are also puzzled by MPCC's motion to supplement the appellate record to include a transcript of a hearing conducted in an adversary proceeding between MPCC and the Committee in this bankruptcy case presided over by a different bankruptcy judge. That judge not only declined to give any preclusive effect to the finding in the Memorandum regarding Monahan's "manipulation of the books and records," the second judge flatly rejected that finding: "[T]his Court rejects the characterization and the inference that
(continued...)

-8-

While it is a close call, and while it is difficult to see how MPCC was, or will be, injured by the bankruptcy court's findings, the Panel will credit MPCC's argument that it may be subject to some future injury as a result of the challenged finding by the bankruptcy court. We will not dismiss this appeal based upon MPCC's lack of appellate standing, but will instead resolve this appeal on the merits.

## III. ISSUES

Whether the bankruptcy court abused its discretion in denying MPCC's motion to amend the judgment.

Whether the bankruptcy court erred in finding that Monahan manipulated the books and records of MC2 and MPCC.

## IV. STANDARD OF REVIEW

A motion to amend the judgment under Rule 9023 is reviewed for abuse of discretion. Sch. Dist. No. 1J, Multnomah Cnty., Or. v. AC and S, Inc., 5 F.3d 1255, 1262-63 (9th Cir. 1993). The standard is the same for review under Rule 7052. Weiner v. Perr, Settles & Lawson, Inc. (In re Weiner), 208 B.R. 69, 72 (9th Cir. BAP 1997).

A factual finding is clearly erroneous if it is "illogical, implausible, or without support in the record." In re Retz, 606 F.3d at 1196 (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)).

[3](...continued)
there was a manipulation of the books and records." Hr'g Tr. 11:4-5, December 9, 2014. While we will grant MPCC's request to supplement the record, the substance of this transcript appears to undercut MPCC's argument that the bankruptcy court's finding could have preclusive effect in any future proceedings.

-9-

# V.   DISCUSSION

Simply put, MPCC's arguments lack merit, and the bankruptcy court did not err in making the finding in the Memorandum that Monahan had manipulated the books and records of MPCC and MC2, nor did it abuse its discretion in denying MPCC's motion to amend.

## A.   "Books and records" is not a legal term of art with an expansive meaning.

MPCC argues that by referring to "the books and records" in its findings in the Memorandum, the bankruptcy court employed a legal term of art with an "expansive scope."  Since, at the hearing on the Committee's objection to MPCC's claim, the bankruptcy court was given only a small portion of the business records of MPCC and MC2, MPCC insists that the bankruptcy court erred because its finding suggests that the court "reviewed and made findings regarding the entire 'books and records' of MPCC and MC2."  MPCC's Op. Br. at 17.  For several reasons, we disagree.

First, MPCC has cited no authority for the assertion that the phrase "books and records" is recognized as a legal term of art with a universally understood meaning in this context, nor have we located any such authority in our own search.  Rather, MPCC simply points to various provisions in statutes that include the phrase "books and records."  That does not make the phrase a term of art.

Second, by definition, a legal term of art does not have an expansive scope.  On the contrary, a legal term of art is usually narrow, specific, and precise.  As the foremost legal dictionary observes, a term of art is "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts."  BLACK'S LAW DICTIONARY 1700 (10th ed.

-10-

2014).  The Supreme Court has cautioned that a term of art is not "merely a generic or descriptive term."  <u>Hamling v. United States</u>, 418 U.S. 87, 121 (1974).  Other courts interpreting a "term of art" generally hold that it has a specific, precise meaning in context.  <u>United States v. Zuniga-Arteaga</u>, 681 F.3d 1220, 1224 (11th Cir. 2012); <u>Miller v. Barberton Municipal Ct.</u>, 935 F.2d 775, 778 (6th Cir. 1991); <u>AGFA Corp. v. United States</u>, 491 F.Supp.2d 1317, 1322 (Ct. Int'l Trade 2007), <u>aff'd</u>, 520 F.3d 1326 (Fed. Cir. 2008).

MPCC spends much of its appellate briefing arguing about how broad the term "books and records" is.  We agree.  As MPCC acknowledges, the term at common law included not only ledgers, but also financial statements, records pertaining to receivables and payables, purchase orders, and invoices.  MPCC's Op. Br. at 19 (citing <u>Mooney v. Bartenders Union</u>, 311 P.2d 857 (Cal. 1957)).

However, we find it inconsistent that, in its arguments, MPCC contends that the meaning of "books and records" is expansive, while simultaneously suggesting that the documents reviewed by the bankruptcy court in this case were not part of MPCC's and MC2's "books and records."  The bankruptcy court reviewed thirty-one Applications, which were effectively invoices for payment for MPCC's services, and determined that five of them, those which purportedly supported most of MPCC's claim, had been marked "PAID."  These documents hardly supported MPCC's claim, but instead, constituted evidence that, as the bankruptcy court found, Monahan had engaged in creative bookkeeping to forestall any potential collection efforts by MPCC's judgment creditor.

MPCC has not shown that the bankruptcy court's use of the

-11-

term "manipulating the books and records" was an inaccurate use of a term of art. Terms of art are not expansive, but are narrow and precise. Nor has MPCC shown that "the books and records" can only be construed to mean all the books and records of MPCC and MC2. Indeed, as we read the bankruptcy court's Memorandum, its reference to "the books and records" necessarily describes only those business records presented to the court in evidence.

In sum, the evidence supports the bankruptcy court's finding that Monahan was "manipulating the books and records" of MPCC and MC2 to avoid collection efforts of the judgment creditor. In making this finding, the court was relying upon the documentary evidence submitted by both parties and the testimony of witnesses. We give deference to the findings of the bankruptcy court adduced at a trial. Rule 8013. To the extent that the court was presented with two plausible views of the evidence, the trial judge's choice between them cannot be clearly erroneous. <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 573-74 (1985).

**B.     The bankruptcy court did not abuse its discretion in denying MPCC's motion to amend**.

Under Civil Rule 59(e), as applicable in bankruptcy proceedings by Rule 9023, a bankruptcy court may alter or amend an order.[4] Motions under Civil Rule 59(e) should not be granted

_____

[4] MPCC's use of a motion to amend the judgment under Rule 9023/Civil Rule 59(e) seems inapt in this procedural context. MPCC does not seek to amend the order of the bankruptcy court, the relief provided under Civil Rule 59(e). Rather, MPCC's clear intent was to persuade the bankruptcy court to modify its findings in the Memorandum. As a result, we think MPCC should have invoked Rule 7052, which incorporates Civil Rule 52(b): "On a party's motion filed no later than 14 days after the entry of judgment,
(continued...)

-12-

unless the trial court "is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law." Kona Enter., Inc. v. Est. of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). Reconsideration is also available to prevent manifest injustice. Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

MPCC's sole argument in its motion to amend was that the bankruptcy court erred in finding that Monahan had manipulated the books and records of MPCC and MC2 because it may have negative preclusive effects. MPCC did not argue that there was any newly discovered evidence, that the bankruptcy court committed clear error, or that there was an intervening change in controlling law. Rather, MPCC targeted the bankruptcy court's alleged improper finding as a manifest error of fact or law, because that finding might be interpreted as a fraud finding in subsequent proceedings.

As we note above, the bankruptcy court effectively derailed the likelihood that MPCC would suffer prejudice as a result of its finding when it announced at the hearing that it was not making a finding of fraud. But even if MPCC could demonstrate a potential for injury, the bankruptcy court was on solid legal ground in

---

[4](...continued)
the court may amend its findings — or make additional findings — and may amend the judgment accordingly. The motion may accompany a motion for a new trial under [Civil] Rule 59."

However, in the context of this appeal, MPCC's reliance upon the wrong rule for relief was harmless error. Under both Civil Rules 52 and 59(e), we review the bankruptcy court's rulings for "manifest error of fact or law." In re Weiner, 208 B.R. at 72. Like the parties and bankruptcy court, we therefore proceed with our analysis under Civil Rule 59(e).

-13-

declining to amend its findings. Indeed, as the Supreme Court has twice ruled within the last six years, the bankruptcy court was not permitted to consider the potential preclusive effect of its own order. See, Medellin v. Texas, 128 S. Ct. 1346, 1361 n.9 (2008) ("The first court does not get to dictate the preclusion consequences of its own judgment."); Smith v. Bayer Corp., 131 S. Ct. 2368, 2375 (2011) (citing Medellin for the same rule). See also, In re Tutu Water Wells CERCLA Litig, 326 F.3d 201, 210 n.5 (3d Cir. 2003) (explaining that "[w]hether the [trial] court's findings have a preclusive effect against [the parties] only becomes ripe for determination if and when the [parties] use the findings and conclusions in other contexts."). Here, MPCC has not shown that the bankruptcy court's findings are being used in another proceeding in some "other context."

Contrary to MPCC's position, the bankruptcy court did not abuse its discretion in denying the motion to amend. In making the challenged finding, it had committed no manifest error in law or fact. Instead, the bankruptcy court was faithful to the Supreme Court's teachings in observing that:

> I've rendered my decision. I gave my reasons. And if another court decides that they want to give preclusive effect, that's for another court to decide.

Hr'g Tr. 5:6-8, April 11, 2014.

## VI. CONCLUSION

We AFFIRM the orders of the bankruptcy court.